UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN W. CANTRALL,

              Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

              Defendant.

Case No. C10-5898-MJP-BAT

**REPORT AND RECOMMENDATION**

John W. Cantrall seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications. He contends that the ALJ erred by (1) improperly evaluating the medical and lay witness evidence, (2) improperly finding Mr. Cantrall not fully credible, (3) incorrectly assessing Mr. Cantrall's residual functional capacity, (4) finding that Mr. Cantrall can perform his past work and is thus not disabled, and (5) failing to find that Mr. Cantrall cannot perform any work in the national economy. Dkt. 14. As discussed below, the Court recommends the Commissioner's decision be **AFFIRMED** and the case **DISMISSED** with prejudice.

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Cantrall is currently 48 years old, has completed 2 years of college, and has worked

as a cook, dishwasher, and porter.[1]  On January 24, 2007, he applied for benefits, alleging disability as of February 15, 2005.  Tr. 94, 97.  His application was denied initially and on reconsideration.  Tr. 46, 51, 53.  The ALJ conducted a hearing on December 17, 2009, and on January 27, 2010, issued a decision finding Mr. Cantrall not disabled.  Tr. 9-23.  As the Appeals Council denied Mr. Cantrall's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 3.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ made the following findings:

**Step one:**  Mr. Cantrall had not engaged in substantial gainful activity since February 15, 2005.  Tr. 14.

**Step two:**  Mr. Cantrall had the following severe impairments: anxiety disorder, social anxiety, personality disorder (histrionic/dependent), panic disorder with agoraphobia, and alcohol abuse.  *Id*.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]  Tr. 15.

**Residual Functional Capacity:**  Mr. Cantrall had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to performing simple, repetitive tasks, he is to have no contact with the general public, and he is limited to occasional contact with co-workers.  Tr. 16.

**Step four:**  As Mr. Cantrall could perform his past work, he was not disabled.  Tr. 18-19.

## DISCUSSION

**A.  The ALJ's evaluation of the medical opinions**

Mr. Cantrall argues that the ALJ erred in evaluating the opinions of treating doctor Richard Shuey, M.D., and examining doctors Lawrence Moore, Ph.D., Robert Schneider, Ph.D.,

---

[1] Tr. 94, 117, 135.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

Jamie Carter, Ph.D., and Scott Alvord, Psy.D.

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

*1.    Dr. Shuey*

Dr. Shuey provided medication management to Mr. Cantrall at Columbia River Mental Health. At medication reviews in March, July, and August 2008, Dr. Shuey assigned Mr. Cantrall a Global Assessment of Functioning score of 50, which represents serious symptoms or a serious impairment in social, occupational, or school functioning.[4] Tr. 304, 306, 309. The ALJ did not mention these particular GAF scores or any of Dr. Shuey's treatment records. Mr. Cantrall argues that the ALJ thus improperly rejected significant, probative evidence without explanation. Dkt. 14 at 14-15.

---

[4] *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. 1994).

An ALJ must explain why "significant, probative evidence has been rejected," and must explain why uncontroverted medical evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). However, while the ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," the ALJ "need not discuss all evidence presented." *Id.* at 1394-95. A claimant's GAF score may be relevant evidence of his overall level of functioning. But without more, the ALJ's assessment of the medical record is not deficient solely because it does not reference a particular GAF score. *Florence v. Astrue*, No. EDCV 08-0883-RC, 2009 WL 1916397, at *6 (C.D. Cal. July 1, 2009) (unpublished opinion) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

Mr. Cantrall presents nothing more than an assertion that the ALJ erred by failing to mention these GAF scores. He does not explain how the ALJ's failure to mention these particular scores made the ALJ's evaluation of the evidence as a whole deficient or how these scores are in and of themselves significant probative evidence that the ALJ must discuss. The Court declines to find that the ALJ erred by failing to discuss Dr. Shuey's GAF score assessments.

*2.   Dr. Moore*

Dr. Moore first evaluated Mr. Cantrall in March 2006. He opined that Mr. Cantrall had difficulties with mental focus, social anxiety, public contact, and an inability to handle the pressures of a normal work setting. He further opined that Mr. Cantrall's "[p]rognosis is somewhat guarded given the chronic nature of his difficulties and in light of the fact that he has difficulty accessing outside mental health services." Tr. 196-202.

Dr. Moore again evaluated Mr. Cantrall in December 2007. At that time, Dr. Moore

noted Mr. Cantrall's acknowledgement that he has a history of problematic drinking, reporting that he had been drinking on a daily basis and although he had able to curb his drinking at that time, he still consumed approximately six 16-ounce cans of beer on the weekends. Dr. Moore opined that Mr. Cantrall's alcohol use was secondary to his anxiety and appeared to be an attempt to calm himself. Dr. Cantrall's opinion was otherwise largely the same as his 2006 evaluation. Tr. 249-57.

The ALJ gave Dr. Moore's opinion that the alcohol use was simply a way of coping with anxiety and not a primary impairment little weight because Dr. Moore did not know all the details of Mr. Cantrall's alcohol use and made his assessment before Mr. Cantrall went through alcohol treatment. The ALJ noted that Mr. Cantrall reported in April 2007 that he had been drinking 12 beers a day for ten years, although he could last up to four days without drinking. Tr. 17.

Mr. Cantrall argues that this was not a legitimate reason to give the opinion little weight because Dr. Moore was aware of Mr. Cantrall's alcohol use. Dkt. 14 at 13. But the ALJ did not find that Dr. Moore was unaware of Mr. Cantrall's alcohol use. The ALJ found that Dr. Moore was unaware of the extent of that use. In addition, an ALJ may give less weight to an opinion that is inconsistent with other evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Mr. Cantrall's report to Dr. Moore about his drinking conflicted with his reports to other providers, and Dr. Moore's opinion that Mr. Cantrall's drinking was not a primary impairment was inconsistent with Mr. Cantrall's subsequent treatment for alcohol abuse. The ALJ did not err in finding Dr. Moore's opinion on the subject unreliable.

    *3.    Dr. Schneider*

Dr. Schneider evaluated Mr. Cantrall in December 2006. Mr. Cantrall reported that he drank three to six beers daily because it calms him down. Dr. Schneider opined that Mr. Cantrall would have difficulties with public contact and handling work pressures. He assigned Mr. Cantrall a GAF score of 39, which indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.[5] Tr. 203-10.

The ALJ noted that a GAF score is only a snapshot of an individual's condition at a given time, and the numerical value should be considered in light of the narrative report and the medical evidence. The ALJ then found that Mr. Cantrall had much higher GAF scores after going through alcohol treatment and counseling. Tr. 17.

Mr. Cantrall argues that this was not a specific or legitimate reason for rejecting Dr. Schneider's opinion about Mr. Cantrall's level of functioning in 2006. Dkt. 14 at 13. However, as with Dr. Moore, Mr. Cantrall underreported his drinking to Dr. Schneider. In addition, Dr. Schneider opined that treatment would improve Mr. Cantrall's condition. The ALJ thus did not err by considering the effect of Mr. Cantrall's alcohol treatment when evaluating Dr. Schneider's opinion. Moreover, the ALJ impliedly found that Dr. Schneider's narrative report reflected greater functioning ability than the GAF score he assigned would indicate. The ALJ did not err by considering Dr. Schneider's report as a whole rather than focusing on a single GAF score assessment.

Mr. Cantrall also argues that the ALJ erroneously rejected significant probative evidence without explanation because he did not mention Dr. Schneider's opinion that Mr. Cantrall was markedly impaired in his ability to interact appropriately in public contacts and respond

---

[5] DSM-IV at 34.

REPORT AND RECOMMENDATION - 6

appropriately to and tolerate the pressures and expectations of a normal work setting. Dkt. 14 at 13. Although the ALJ did not mention the fact that Dr. Schneider checked these particular boxes in his evaluation, this does not mean the ALJ rejected Dr. Schneider's opinion about Mr. Cantrall's difficulties in these areas. Tr. 17. The ALJ need not repeat a doctor's report verbatim in order to properly assess it. The ALJ did not err in assessing Dr. Schneider's opinion.

*4.     Dr. Carter*

Dr. Carter evaluated Mr. Cantrall in November 2008. Dr. Carter noted that Mr. Cantrall had improved in his ability to use public transportation, he did not have feelings of worthlessness and hopelessness, and that he was sober following alcohol treatment, although he was not attending Alcoholics Anonymous meetings. Dr. Carter opined that Mr. Cantrall's main limitation in adapting to a work environment would be dealing with co-workers and the public. Tr. 257-65. The ALJ gave Dr. Carter's opinion significant weight because it was consistent with the other evidence. Tr. 18.

Mr. Cantrall argues that the ALJ erred by failing to mention Dr. Carter's opinion that Mr. Cantrall had moderate limitations in his ability to exercise judgment and make decisions, relate appropriately to co-workers and supervisors, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and control physical or motor movements and maintain appropriate behavior. Dkt. 14 at 21. Again, the ALJ is not required to repeat a doctor's opinion verbatim in order to properly assess the opinion. And the fact that the ALJ did not specifically mention all of the checkboxes Dr. Carter checked does not mean the ALJ rejected the opinion. For example, the ALJ accommodated Dr. Carter's opinion that Mr. Cantrall would have moderate limitations in relating appropriately to co-workers and supervisors by limiting Mr. Cantrall to only occasional contact with them. Tr. 16.

Mr. Cantrall also asserts that Dr. Carter's opinion is not fully consistent with the opinions of Dr. Moore, Dr. Schneider, Dr. Alvord, and Dr. Shuey and was thus not a legitimate reason to reject those opinions. Dkt. 14 at 21. The ALJ's finding that Dr. Carter's opinion was consistent with the other evidence does not require the ALJ to consider whether the opinion exactly matches each and every other opinion. The ALJ found Dr. Carter's opinion to be consistent with the evidence as a whole. The Court, having reviewed the record as a whole, cannot say that this was an unreasonable interpretation of the opinion. And there is nothing to indicate that the ALJ relied on Dr. Carter's opinion to reject any other medical opinion, if it would in fact be error to do so. The ALJ did not err in assessing Dr. Carter's opinion.

### 5. *Dr. Alvord*

Dr. Alvord evaluated Mr. Cantrall in August 2009. Dr. Alvord noted that Mr. Cantrall reported that he continued to drink socially and that he had difficulty in finding motivation to complete household chores. Dr. Alvord also noted that the results of psychological testing showed that Mr. Cantrall had over-exaggerated his psychological distress; Dr. Alvord believed that this was likely a cry for help, given Mr. Cantrall's histrionic personality traits. Dr. Alford assigned Mr. Cantrall a GAF score of 50-55, and opined that Mr. Cantrall would have moderate difficulty following complex instructions and no problems with simple instructions. Tr. 313-20. The ALJ gave Dr. Alford's opinion significant weight, as it was consistent with the other medical evidence. Tr. 18.

Mr. Cantrall argues that the ALJ erred by failing to mention Dr. Alvord's opinion that Mr. Cantrall's "symptoms do appear fairly chronic and while he is receiving some benefit from the medications his current psychiatric functioning will continue to present a significant hurdle to gainful employment. . . . Overall, his prognosis is guarded." Tr. 320. Again, the ALJ is not

required to repeat a doctor's opinion verbatim in order to properly assess the opinion. The ALJ thoroughly summarized Dr. Alvord's opinion. The fact that he did not specifically mention these lines from Dr. Alvord's opinion does not mean he rejected any part of the opinion. Rather, the ALJ interpreted the opinion, gave it significant weight, and incorporated the limitations opined by Dr. Alvord into the residual functional capacity assessment. The ALJ did not err in assessing Dr. Alvord's opinion.

### B. The ALJ's evaluation of the lay witness evidence

Mr. Cantrall argues that the ALJ erred in rejecting the evidence from treating mental health care provider Catherine Owen, ARNP.

Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific reasons germane to each witness for doing so. *See Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Counselors and nurse practitioners are not acceptable medical sources who can give medical opinions. *See* 20 C.F.R. § 416.913(a). The ALJ may evaluate opinions of other medical sources using the same factors applied to evaluate medical opinions of acceptable medical sources. SSR 06-03p. But the ALJ may give less weight to opinions of other medical sources than to those of acceptable medical sources. SSR 06-03p.

In an October 2008 medication management visit, Ms. Owen found that Mr. Cantrall's alcohol dependence was in early remission and assigned him a GAF score of 45 to 50. Tr. 302. After noting this score, the ALJ noted that upon discharge from inpatient treatment in February 2009, Mr. Cantrall's GAF score was 65, which represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well,

and having some meaningful interpersonal relationships.[6] Tr. 18.

Mr. Cantrall argues that the fact that he had a higher GAF score in 2009 is not a legitimate reason to reject Ms. Owen's opinion about his functioning in 2008. Dkt. 14 at 14. But the fact that alcohol treatment was effective in improving Mr. Cantrall's functioning was a germane reason to give the opinion about his functioning prior to treatment less weight. The ALJ did nor err in assessing Ms. Owen's opinion.

### C. The ALJ's credibility assessment

Mr. Cantrall argues that the ALJ erred in finding him not fully credible. Dkt. 14 at 16. The ALJ did not find that Mr. Cantrall was malingering. Thus, the ALJ was required to provide clear and convincing reasons to reject his testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

The ALJ found that Mr. Cantrall's daily activities showed that he was not as impaired as he alleged. The ALJ found that Mr. Cantrall testified that he is an artist and described selling his work online and displaying it in galleries. The ALJ also found that Mr. Cantrall stated that he was afraid of using public transportation but this was not a problem after he underwent therapy in 2008 and 2009. And the ALJ found that Mr. Cantrall testified that he goes shopping with his roommate on weekends and acknowledged he needed "exposure therapy" to overcome his social phobia. Tr. 17.

An ALJ may consider a claimant's daily activities when evaluating his credibility. *Light*

---

[6] DSM-IV at 34.

*v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may not penalize a claimant for attempting to live a normal life in the face of his limitations. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). But contradictions between a claimant's reported activities and his asserted limitations are an issue of credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Mr. Cantrall asserts that the ALJ's finding about his artwork is invalid because he testified that he only sold one piece in a four-month period for $70. Dkt. 14 at 16. But Mr. Cantrall also reported to Ms. Owen in February 2009 that he would be showing his work in a gallery and had sold pieces for $400 to $1,200. Tr. 300. The ALJ properly considered this statement in finding Mr. Cantrall's work as an artist incompatible with the level of disability he described.

Mr. Cantrall also asserts that the ALJ erred in finding that he had no problems using public transportation. Mr. Cantrall points to his testimony that while he was in therapy he had gotten to the point where he could take the bus, but he thought that if he tried now he would panic. Dkt. 14 at 16. However, Mr. Cantrall also testified that he does not go out on his own because he has no money, but if he did have money, he could do so. He stated it would not be easy at first but he was pretty sure that over time it would become easier. Tr. 34. The ALJ's finding that Mr. Cantrall's testimony shows that he is not as limited as he alleged is a rational interpretation of the evidence that the Court must uphold. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Mr. Cantrall also argues that the fact that Mr. Cantrall goes shopping with his roommate on weekends is not a reason to question his credibility. Dkt. 14 at 16. But the ALJ rationally found that this activity is incompatible with the level of disability Mr. Cantrall alleges. The ALJ

did not err in considering this testimony.

The ALJ also found that Mr. Cantrall's use of medication was not consistent with his allegations. The ALJ noted that Mr. Cantrall testified that he takes his anti-anxiety medication when he anticipates a panic attack, but he had not taken this medication over the past month. He later testified that he experiences panic attacks once or twice a week. Tr. 17. This inconsistency was a valid reason to question Mr. Cantrall's credibility. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Finally, Mr. Cantrall challenges the ALJ's statement that the medical evidence indicates that Mr. Cantrall has often used alcohol to treat anxiety, although he stated he drinks only on a social basis. Tr. 17. Mr. Cantrall argues that this is neither a specific nor legitimate reason to question his credibility. The Court agrees. But an ALJ's use of an invalid reason to support his adverse credibility finding may be harmless if, despite the error, there remains substantial evidence to support the ALJ's conclusion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). The Court finds that in this case, the ALJ's credibility assessment was based on clear and convincing reasons supported by substantial evidence. The Court will not disturb the ALJ's credibility assessment.

**D.      The ALJ's residual functional capacity assessment**

Mr. Cantrall argues that because of the errors he asserts above, the ALJ erred in assessing his residual functional capacity. Dkt. 14 at 17. However, as the Court has concluded that the ALJ did not err in assessing the medical and lay witness evidence, or in evaluating Mr. Cantrall's credibility, this argument fails.

Mr. Cantrall also argues that the ALJ erred by giving significant weight to the opinion of the state agency consulting psychologist Anita Peterson, Ph.D. Dkt. 14 at 18. Dr. Peterson

opined that Mr. Cantrall would have moderate difficulty with understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration; completing a normal workday and workweek without interruption from psychological symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and responding appropriately to changes in the work setting; he would have marked difficulty with dealing with the general public. Tr. 229-31.

The ALJ mentioned Dr. Peterson's opinion about Mr. Cantrall's difficulties with complex tasks, concentration, and dealing with the public, but did not recite her findings about his difficulties with completing a normal workday and workweek and performing at a consistent pace. Tr. 18. Mr. Cantrall argues that the ALJ thus improperly rejected this portion of Dr. Peterson's opinion without explanation. As discussed above, the ALJ need not repeat a doctor's opinion verbatim. The fact that he did not specifically mention each box Dr. Peterson checked does not mean he rejected that portion of her opinion. The ALJ considered Dr. Peterson's opinion and gave it significant weight, finding that it was consistent with the other medical evidence. Tr. 18. The ALJ did not err in assessing Dr. Peterson's opinion.

### E. The ALJ's finding of non-disability

Mr. Cantrall argues that the ALJ erred by finding that he was capable of performing his past relevant work and in failing to find that he was not able to perform any other work in the national economy. Dkt. 14 at 18-19. However, he bases this argument solely on the arguments the Court has rejected above. Because the ALJ did not err in evaluating Mr. Cantrall's residual functional capacity, the ALJ's finding that he can perform past work consistent with that residual functional capacity is not in error. And because the ALJ properly found Mr. Cantrall not disabled at step four, he was not required to perform a step five analysis.

# CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED** and this case **DISMISSED** with prejudice. A proposed order accompanies this Report and Recommendation.

Objections, if any to this Report and Recommendation must be filed and served no later than **October 11, 2011.** If no objections are filed, the matter will be ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Responses to objections must be filed no later than 14 days after being served with objections. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

DATED this 27th day of September, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14